UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:
Louise Marie Williams,
        Debtor.
_____/
LOUISE MARIE WILLIAMS
        Appellant,

v.                                              Case No: 2:14-cv-11844-VAR-MKM
                                                Judge: Hon. VICTORIA A. ROBERTS

WAYNE COUNTY TREASURER
        Appellee,
_____/

**ORDER DENYING APPELLANT'S APPEAL OF THE BANKRUPTCY COURT'S:**

**(1) ORDER OF VALUATION;**
**(2) DISMISSAL OF APPELLANT'S CHAPTER 13 CASE; AND**
**(3) DENIAL OF APPELLANT'S MOTION FOR STAY**

**I.    INTRODUCTION**

Louise Marie Williams owns property at 180 E. Grand Blvd., Detroit, Michigan ("Property"). It operates as an adult assisted living facility for people rehabilitating from substance abuse and other medical issues.

On January 9, 2013, Williams filed a Voluntary Chapter 13 Bankruptcy Petition. The description of her debt included delinquent taxes on the Property owed to the Wayne County Treasurer. Chapter 13 Bankruptcy allows an individual with regular income to develop a court approved plan to repay all or part of her debt. This is done over a period of time and under court supervision. In her Petition, Williams claimed the Property had a value of $28,000. She proposed to pay delinquent taxes to the Treasurer based on this value and sought to discharge any taxes owed on a value exceeding $28,000.

1

The Treasurer filed Proof of Claim No. 2, asserting a secured tax lien in the amount of $77,422.17 for delinquent taxes on the Property (for the 2005-11 tax years.) The City of Detroit filed a claim in the amount of $7,267.74. Therefore, the total claim for taxes on the Property as of the filing of the Petition was $84,689.91 ("Total Tax Claim').[1]

The Michigan General Property Tax Act, MCL§211.1, *eq seq*., governs the collection of real property taxes in Michigan. Unpaid property taxes become a lien, first and superior to all other liens, on the property on December 1st of the applicable tax year. On March 13, 2014, the Bankruptcy Court issued its Order Regarding Value of the Property ("Valuation Order"), setting a value of $100,000. In setting this value, the Court denied Williams' Objection to Claim 2.

On March 26, 2014, the Bankruptcy Court held a hearing and denied confirmation of Williams' Chapter 13 Plan ("Plan"). As a result, the Court dismissed her bankruptcy case. The Court found that Williams could not feasibly execute the Plan for two reasons: (1) the net income generated from the Property was insufficient to support payments under the Plan; and, (2) the value of the Property and the secured tax liens were significantly higher than those set forth in the Plan.

Williams appealed the Dismissal Order and filed a Motion for Stay Pending the Proceedings. The Bankruptcy Court denied the motion.

Williams now appeals the Bankruptcy Court's Valuation Order, Dismissal Order, and denial of her Motion for Stay. In response the Treasurer asks the Court to dismiss Williams' appeal of the Valuation Order for lack of jurisdiction.

---

[1]The claim filed by the City of Detroit was transferred post-petition by operation of law to the Treasurer. If the property taxes are unpaid by March 1 of the year subsequent to the tax year, the local taxing authority forwards the delinquent taxes to the county treasurer for collection. MCL §211.55.

The Court finds that it has jurisdiction to review Williams' appeals, confirms the findings of the Court, and **DENIES** all of Williams' appeals.

## II. BACKGROUND

In her Plan, Williams proposed to: (1) repay, as a modified claim, all tax obligations owing on the Property for tax years 2003-05; (2) reduce the principal balance of personal property taxes for 2005 and real property taxes for 2006, consistent with her asserted value of the Property; and (3) treat as unsecured debt all remaining taxes owing on the Property for 2006-12.

On March 12, 2014, the Bankruptcy Court held an evidentiary hearing to determine the value of the Property and consider Williams' objection to Claim 2. The outcome of the hearing was significant. Williams had substantial tax liability dating back several years. Each year's tax liability was a separate lien on the Property. But, bankruptcy law provides that a debt is only secured up to the value of the property securing it. 11 U.S.C. 506 (a)(1). Williams sought to have the Bankruptcy Court agree the Property was worth only $28,000, thus reducing her tax liability by allowing her to treat much of the real property taxes owed as unsecured debt, subject to payment at deep discounts. On the other hand, Wayne County sought a higher value to enhance its secured lien and guarantee payment of all delinquent taxes.

At the hearing, the Treasurer called two witnesses: (1) Sharon Harbin, a licensed appraiser, and (2) Dorcas Tandoh, a licensed assessor for the City of Detroit. Both testified that the Property was worth $100,000. Williams called Rachel Saltmarshall, a licensed real estate broker and contractor. She testified that the Property was worth not more than $28,000.

Both Harbin and Saltmarshall used the sale prices of recently sold properties ("comparables") to determine the value of the Property. Tandoh performed: (1) a cost analysis, which looks at replacement value and then takes out a depreciated value; and, (2) a market analysis, which looks at the average price within the market. She also analyzed the value of the

Property based on the stream of income approach, which values property based on its earning potential.

Saltmarshall testified that the condition of the Property was seriously compromised which affected optimum marketability.

On March 13, 2014, the court entered its Valuation Order and Objection Order in favor of the Treasurer. Williams did not appeal these Orders until April 4, 2014, raising a question about the timeliness of these appeals.

As a direct result of the property valuation, Williams' Chapter 13 Plan was found unfeasible and her Bankruptcy was dismissed. There is no question that Williams timely appealed the Dismissal Order.

### III. BASIS FOR APPELLATE JURISDICTION

This Court has appellate jurisdiction over final orders issued by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division. 28 U.S.C. § 158. A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). A notice of appeal must be filed within fourteen days from the date of entry of the judgment or order appealed from. Fed. R. Bankr. P. 8002(a).

In its challenge to Williams' attempt to appeal the Bankruptcy Court's Valuation Order, the Treasurer argues that Williams failed to appeal this final order within 14 day of its entry, leaving this Court without jurisdiction to consider valuation.

"An order determining the value of property pursuant to 11 U.S.C. § 506(a) is a final order for purposes of appeal if the valuation was made for purposes of plan confirmation." *In re Creekside Sr. Apartments, LP*, 477 B.R. 40, 45 (B.A.P. 6th Cir. 2012). The Valuation Order issued by the Bankruptcy Court was made for the purpose of confirming Williams' Plan. Hr'g Tr., at148. Therefore, the Valuation Order was a final order, immediately appealable. *Lindsey v.*

4

*O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 488 (6th Cir.1996) (an order that finally disposes of discrete disputes within a larger case may be appealed immediately) ; *see also Chase Manhattan Mortgage Corp. v. Rodriguez (In re Rodriguez),* 272 B.R. 54, 58 (D.Conn.2002).

However, "the right to immediately appeal an order under § 506(a) does not preclude appeal of that order from plan confirmation." *In re Brice Rd. Developments, L.L.C.*, 392 B.R. 274, 282 (B.A.P. 6th Cir. 2008).

> Requiring immediate appeal of 506(a) orders will result in the introduction of unnecessary bankruptcy appeals because parties will file precautionary appeals "only to protect their position in the event that the order is subsequently applied to affect their rights." *American Preferred Prescription,* 255 F.3d at 94. Additionally, requiring a pre-confirmation appeal from a 506(a) order will potentially cause unnecessary delay and cost.

*In re Rodriguez*, 272 B.R. 54, 58 (D. Conn. 2002).

Since the Bankruptcy Court incorporated its factual findings from the Valuation Order into the Dismissal Order, the Court finds that it has jurisdiction to review the Valuation Order in conjunction with its consideration of the Dismissal Order.

IV. ANALYSIS

A. EVIDENCE SUPPORTS THE BANKRUPTCY COURT'S VALUATION AND OBJECTION ORDERS; NO MISTAKE WAS COMMITTED.

Williams argues that the Bankruptcy Court unfairly discounted the impact on the market value of the Property of both the overall condition and the deferred maintenance on the Property. She also contends that the Bankruptcy Court: (1) misapplied Harbin's per unit comparison formula by applying the "per bed" value to a fully occupied facility, even though the Property is only minimally occupied; (2) unreasonably assumed that a potential purchaser would be able to fully utilize the Property, despite the condition of the neighborhood in which the Property sits; and (3) utilized a comparable that, unlike the Property, exists in a prosperous part of town and is

almost fully occupied. As a result, Williams says the Bankruptcy Court erred in: valuing the Property at $100,000; determining that all of the property tax due was secured; and denying Williams' objection to the Treasurer's claim.

With respect to the secured status of claims in a bankruptcy proceeding, the United States Bankruptcy Code provides:

> **(a)(1)** An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). Pursuant to this section, any amount of an otherwise secured claim that exists in excess of the value of the Property is deemed unsecured.

The Bankruptcy Court explained that each of the witnesses was a qualified expert in the field of valuation and that there was no evidence of bias towards either or any of the parties. After considering the credibility of the comparables used by Saltmarshall, the Bankruptcy Court explained that the primary flaw in her analysis was her failure to focus on how the Property is used, or the target market, which was the heart of Harbin's testimony. Furthermore, the Bankruptcy Court found that one of the comparables used by Saltmarshall lacked credibility because it: was sold a long time ago and – unlike the Property - was vacant at the time of sale. Another comparable used by Saltmarshall lacked credibility according to the Bankruptcy Court, because it was resold at a much higher price a few months after the sale price used by the expert as a comparable.

On the other hand, the Bankruptcy Court found Harbin's testimony to be highly credible. She opined that the comparables that she considered were within the same target market. She also looked at a vast number of properties and then took an average to figure out the market

value. Based on these assumptions, Harbin found that the Property had significant value to a niche market.

The Bankruptcy Court also found Tandoh's testimony credible, given that she used three separate forms of analysis; her work for the City of Detroit required her to defend the value of property as a licensed assessor; she relied extensively on hard data as part of her analysis; and, she possessed significant experience.

With respect to the costs to repair the Property, the Bankruptcy Court noted that the majority of the repairs were needed to make the third floor habitable. It also found that the value of the Property would only rise with a habitable third floor, and an investor would be perfectly satisfied waiting 3-4 years to make back his or her initial investment, particularly since the Property was already licensed and operating.

The Bankruptcy Court's valuation of the Property and its evaluation of the feasibility of the Plan are factual findings. This Court must defer to factual findings of a Bankruptcy Court on appeal unless the findings are clearly erroneous.11 U.S.C.s 158(c); Fed. R. Bankr. P. 8013; *Ragland Inc. Co. v. Commissioner*, 435 F.2d 118 (6th Cir. 1970). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Mathews)*, 209 B.R. 218 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). An appellate court may not reverse a factual finding if the trial court's account of the evidence is plausible. *Anderson v. Bessemer City*, 470 U.S. 564 (1985).

"Because the valuation process often involves the analysis of conflicting appraisal testimony, a court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses." *In re Creekside Sr. Apartments, LP*, 477 B.R. 40, 61 (B.A.P. 6th Cir. 2012).

7

The Bankruptcy Court provided solid analysis of the evidence, considered the qualifications of the experts, and weighed their testimony appropriately. This Court finds the Bankruptcy Judge's valuation to be plausible. Accordingly, the Valuation Order is not clearly erroneous, no mistake was committed and the denial of Williams' objection was proper.

Williams' Appeal of the Valuation Order and the Objection Order is **DENIED**.

## B.  THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION WHEN IT DISMISSED WILLIAMS' CHAPTER 13 CASE.

Williams argues that the Bankruptcy Court erred in dismissing her Chapter 13 case; she says the dismissal was based on an incorrect property valuation.

Bankruptcy Courts must determine that "the debtor will be able to make all payments under the plan and to comply with the plan" before they can confirm a Chapter 13 Plan. 11 U.S.C § 1325(6). This finding of feasibility is a factual one.

In considering the correctness of dismissal of Williams' Chapter 13 case, abuse of discretion is the standard of review. *In re Zick*, 931 F.2d 1124 (6th Cir. 1991). "An abuse of discretion occurs when the bankruptcy court relies upon clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard." *In re Airspect Air, Inc.*, 385 F.3d 915, 920 (6th Cir 2004).

As explained above, the Bankruptcy Court's Valuation Order was reasonable and not clearly erroneous. The Bankruptcy Court's Dismissal Order was also reasonable, given that the Plan contemplated an erroneously low value of $28,000 for the Property. In its dismissal, the Bankruptcy Court concluded that given the net income generated by the Property, Williams could not propose and execute a feasible Plan of reorganization and pay the Treasurer in full based upon the Valuation Order and the Bankruptcy Court finding that the Treasurer had a secured claim up to the amount of $100,000. As required by 11 U.S.C. §1325 *et seq.,* "[t]o satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that is that it

8

is likely the debtor will have the necessary resources to make all payments as directed by the plan. *First National of Boston v Fantasia*, (*In re: Fantasia*, 211 BR 420, 423 (BAP 1st Cir. 1997). Williams' proposed Plan failed to provide for payment of the Treasurer's secured claim and Total Tax Claim of $84,689.91. There was no reliance upon clearly erroneous findings of fact. Nor was there an improper application of the law or use of an erroneous legal standard.

The Bankruptcy Court did not abuse its discretion; Williams' appeal of the Bankruptcy Court's Dismissal Order is **DENIED**.

### C. WILLIAMS FAILS TO SATISFY HER BURDEN FOR A STAY OF PROCEEDINGS.

Williams has the burden to show an entitlement to a stay pending appeal. The Court must consider: "(1) the likelihood of success on the merits; (2) whether the injunction will save [Williams] from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). "In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Williams argues a stay should be granted because: (1) the appeal will likely succeed given that the present and practical real estate market in the City of Detroit would not support a value of $100,000 for the Property; (2) Williams will suffer irreparable injury if injunctive relief is not afforded, since her livelihood and her ability to maintain her daily personal expenses are dependent upon the continued operation of the Property as an adult foster care facility; (3) Williams' creditors will not suffer harm given that all creditors will still be entitled to full rights of collection allowed under both state and federal laws; and (4) the public will not be affected by the injunctive relief.

The Court has already determined that Williams loses on the merits of her appeal, given that the Bankruptcy Court reasonably valued the Property at $100,000. Additionally, Williams will not suffer immediate harm because she has until March 31, 2015 to redeem the Property from a judgment of foreclosure. On the other hand, the Treasurer is not fully protected by equity in the Property, inasmuch as it is only worth $100,000 and, as of May 30, 2014, Williams owes $102,465.30 in delinquent taxes for 2005-2013. The Treasurer might be forced to delay foreclosure if these orders are not upheld. It goes without saying that payment of real property taxes is necessary to fund public services; there is strong public interest in allowing the Treasurer to collect property taxes that are due and to use lawful remedies to do so.

Motion for Stay is **DENIED**.

## I. CONCLUSION

The Court **DENIES** Williams' appeal of the Bankruptcy Court's: (1) Valuation Order, (2) Objection Order, (3) Dismissal Order, and (4) denial of Williams' Motion to Stay. The Valuation Order states that the Treasurer has a secured claim up to $100,000. The Total Tax Claim of $84,689.91, plus interest, is fully secured and payable by Williams since the value of the Property is established as $100,000.

**ORDERED**.

        S/Victoria A. Roberts
        Victoria A. Roberts
        United States District Judge

Dated: September 17, 2014

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 17, 2014. <br><br> s/Linda Vertriest <br> Deputy Clerk |